## 200

**In re ROE.**

**Patent Appeals No. 4091.**

Court of Customs and Patent Appeals.
Feb. 6, 1939.

Rehearing Denied March 27, 1939.

A. Yates Dowell, of Washington, D. C., for appellant.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

BLAND, Judge.

Having allowed claims 13, 19, and 22 in appellant's application, in which were both method and apparatus claims, for a patent relating to air conditioning, the Primary Examiner of the United States Patent Office refused to allow claims 11, 17, 20, 21, 23, and 25 to 28, inclusive, for reasons which will be referred to hereinafter. Upon appeal to the Board of Appeals, the decision of the examiner rejecting said claims was affirmed. Appellant has appealed here from the decision of the Board of Appeals.

Claims 11, 20, 26, and 27 are regarded as illustrative and follow:

"11. A refrigeration system including: an evaporator and condenser having connections with one another, the whole arranged to constitute a cyclic passage and maintained under relatively high vacuum; and a reaction-type power-drivable axial-blade-screw compressor in said cyclic passage and in compressive relation from said evaporator to said condenser.

"20. A refrigeration system including: an evaporator and condenser having connections with one another, the whole arranged to constitute a cyclic passage and maintained under relatively high vacuum; a reaction-type multi-stage power-drivable axial-blade-screw compressor in said cyclic passage and in compressive relation from said evaporator to said condenser; and a fluid refrigerant in said cyclic passage and the boiling point of which at atmospheric pressure is above 70° F.

"26. In a refrigeration system utilizing water as a refrigerant, a compressor, a condenser and an evaporator all connected in the order named in a closed circuit, said compressor being of the multi-stage reaction turbo-type, whereby the relatively large volume of gaseous refrigerant leaving the evaporator of the system is compressed to the proper condensing pressure in a relatively small practical and efficient machine.

"27. The process of refrigeration comprising the evaporation of a refrigerant of such characteristics that its volume is relatively large when in a gaseous state, sucking in one direction the vapor from the surface of liquid refrigerant, increasing the pressure of said vapor, again sucking said vapor in the same direction at a higher pressure and again increasing the pressure of said vapor."

The references relied upon by the Patent Office tribunals are as follows: Worthen, 1,463,110, July 24, 1923; Leblanc-Vickers (Ger.), 489,194, Feb. 3, 1926; Carrier, 1,575,818, March 9, 1926; Weaver, 1,761,551, June 3, 1930.

Applicant's invention, as defined by some of the rejected claims, relates to a refrigerating system of the compressor-condenser-evaporator type utilizing a refrigerant having a relatively large volume when in the gaseous state and a compressor of the multi-stage reaction turbo-type. The refrigerant, which applicant states he uses, is water.

The examiner, in rejecting the claims, used the following language:

"The appealed claims are each rejected as drawn to an old combination shown in the Carrier patent. The substitution of applicant's compressor for Carrier's in Carrier's combination is not believed to make a new combination. See In re McNeill, 1902 C.D. 563, 100 O.G. 2178, 20 App.D.C. 294. Nor is the substitution of water for Carrier's $CCL_4$ believed to ef-

fect such a combination. Carrier clearly discloses the general combination of a compressor, condenser and evaporator in which the refrigerant circulated ($CCl_4$) is of such a nature that it occupies a relatively large volume when in a gaseous state. Furthermore, Carrier's multi-stage rotary compressor is designed to take care of large volumes of evaporated refrigerant. * * *

*     *     *     *     *     *     *

"The appealed claims are each rejected as presenting no invention over Carrier in view of Leblanc-Vickers taken with Worthen. These claims differ from Carrier, *who clearly discloses the general combination to be old,* in that they recite the utilization of a somewhat different form of *compressor* and *refrigerant* from that specified by the patentee. Applicant's compressor, however, is nicely depicted and described in the drawings and specification, respectively, of the Worthen patent. Applicant, furthermore, is not first in making use of water as a refrigerant which fact is apparent from the disclosure in the Leblanc-Vickers patent (or the Weaver patent). Carrier, by his adoption of $CCl_4$, as his refrigerant, had before him the problem of removing from his evaporator and compressing large volumes of refrigerant vapor. To this end he selected a multiple stage rotary compressor for utilization in his system. The substitution for $CCl_4$ of an old refrigerant (water), the vapor of which has even a larger "cubic feet per pound" ratio than $CCl_4$ and the utilization of a multi-stage reaction turbo-type compressor in place of Carrier's multi-stage rotary compressor, in order that the correspondingly larger volume of water vapor might be handled, in Carrier's combination, in view of the Leblanc-Vickers patent taken with the Worthen patent, is not deemed to involve invention.

"Conclusion.

"I. The appealed claims are each finally rejected as drawn to an old combination shown in Carrier's patent.

"II. The appealed claims are each finally rejected as presenting no invention over Carrier's teachings in view of the Leblanc-Vickers and the Worthen disclosures."

The board recited the grounds of rejection of the examiner without disapproving of his reasoning or conclusion.

We find the following in the decision of the board:

"* * * With regard to the refrigerant, the patentee [Carrier] states that the refrigerant should have relatively large vapor volumes, that the carbon tetrachloride refrigerant is non-explosive, non-inflammable and is safe to be used in a refrigerating system because all of the parts, including the evaporator, exhauster and condenser, are under a vacuum and that the liquid itself can be handled almost like water under atmospheric pressures and is entirely harmless.

"In view of these suggestions as to the capacity and analogy of the refrigerant used in the Carrier patent to water, and to the conditions in the compressor being similar to the conditions in a steam turbine, it is believed that the rejections of the examiner are proper."

More definitely stated, it seems to be the view of the examiner and the board that it did not require invention on the part of applicant to use water as a refrigerant in Carrier's multi-stage rotary compressor in view of the fact that it was old in the art to use multi-stage reaction turbo-type compressors in the art and in further view of the fact that Carrier taught the use, under vacuum, of a refrigerant, carbon tetrachloride, which was non-explosive, non-inflammable and had a relatively large vapor volume. As a matter of good measure, the examiner cited the patents to Leblanc-Vickers and to Weaver which show the use of water as a refrigerant. The board, however, did not specifically apply the two last-referred-to references but stated: "the conditions in the compressor being similar to the conditions in a steam turbine."

In claims 11, 17, and 21 there is no suggestion of the use of water as a refrigerant. In claim 20 the refrigerant is defined as being one with a boiling point at atmospheric pressure of above 70° F. The same limitation is found in claim 23. Water as a refrigerant is specifically provided for in claim 26, while claim 27, as well as claims 25 and 28, call for a refrigerant having a relatively large volume in its gaseous state. Claims 25 to 28, inclusive, were added for purposes of appeal.

Unquestionably the prior art specifically taught the use of a refrigerant which had a volume relatively large when in a gaseous state and this element would add noth-

ing inventive to the claims. It is also clear that it was old in the art to use water as a refrigerant. The question therefore is presented, Did it require invention in view of the teachings of Carrier, who used a refrigerant of relatively large volume in a gaseous state, such as carbon tetrachloride, to use water which produced a greater volume of vapor than any other refrigerant known to the art in a compressor of the multi-stage reaction turbo-type, such a compressor being disclosed in the Worthen patent?

It seems to us that Carrier by the use of his device found out that he was able to use a refrigerant, the volume of which was relatively large in a gaseous state, and that one skilled in the art who wished to use water as a refrigerant to accomplish the purpose which Carrier accomplished would have no difficulty, after he had examined the prior art references, in doing what appellant has done without the exercise of the inventive faculty.

Appellant argues that this court's decision in Re Wessblad, 58 F.2d 418, 19 C.C.P.A., Patents, 1175, should have been regarded as controlling by the Patent Office and should be regarded as controlling of our decision. In that case the applicant's combination claims which related to an air-cooled absorption refrigerating apparatus were rejected upon four references. The character of the refrigerant used was not relied upon to impart invention. The court stated the issue as [page 419]: "* * * The sole question, therefore, is whether invention was involved in modifying the von Platen disclosure, in view of the other references, by substituting for its cooling system the cooling apparatus disclosed in the patent to Darlington."

The court held, after commenting on certain features of the references, that: "* * * considering the references in connection with appellant's combination, its admitted novelty, usefulness, and the distinct advancement it made in the absorption refrigerating art, we are out of accord with the conclusion reached by the Patent Office tribunals. We think the claims are patentable."

It will be noticed that it was upon a consideration of the showing or lack of showing of the references together with the other admitted elements which brought the court to the conclusion that the claims there involved defined invention.

In re Barsky, 62 F.2d 192, 20 C.C.P.A., Patents, 779, which involved an alleged invention relating to a refrigerating system of the absorption type, the same argument with reference to the controlling influence of the case of In re Wessblad, supra, was made as is made here, and in answer to that argument the court said [page 194]: "It is contended by counsel for appellant that the decision of the Board of Appeals, in the case at bar, should be reversed on the authority of the decision of this court in the case of In re Wessblad, 58 F.2d 418, 19 C.C.P.A. [Patents] 1175, because, it is argued, the court there held that the substitution of air cooling for water cooling in refrigerating systems of the absorption type, 'where novelty, usefulness, and a distinct advancement in the art is admitted,' involved invention.

"That is not a correct statement of the holding of the court in that case.

"The court there held that, considering the novelty and usefulness of the apparatus involved and the distinct advancement it made in the art, *in connection with the references of record,* the claims were patentable." [Italics quoted.]

The references in the case of In re Wessblad, supra, are not the same references as are relied upon by the Patent Office tribunals in the instant case and their application to the invention there involved is quite different from their application to the claims at bar. We find nothing in the case of In re Wessblad, supra, which requires a reversal of the decision of the Board of Appeals in the instant case.

Appellant's chief contention is that his great problem was in devising a system which could utilize water as a refrigerant which was known to have the quality of producing a greater volume when vaporized than any other material used as a refrigerant. Were it not for the teaching of Carrier of the beneficial use of a refrigerant which had a relatively large volume when in a gaseous state there might be more merit to appellant's contention that it required invention to make the substitution of elements shown in the prior art in his combined apparatus and method.

Appellant has assigned error in the action of the Board of Appeals "in failing to recognize that Claims 27 and 28 are process claims and should not have been included in the general rejection of claims on the structural references." Appellant

argues that the process as defined by claims 27 and 28 cannot be said to be an old combination since the steps included therein are clearly not disclosed in any one of the references. It is further contended that the process claims being based upon the structure are not met by the showing of the structure of the cited patents since they do not meet the process steps recited in the claims.

While there has been no rejection on the part of the Patent Office tribunals on the ground that the process claims are not allowable for the reason that they define merely the operation of appellant's apparatus (and there has been no requirement for division), it seems clear that the alleged inventions are so closely related that if there is no invention in producing the apparatus there can be no possible invention, for the same reasons, in the method claims which are based on the steps of performance of the apparatus. As to this assignment of error we think appellant's contentions are wholly without merit.

It is our view that the tribunals of the Patent Office arrived at the correct conclusion, and the decision of the Board of Appeals is affirmed.

Affirmed.